Opinion of the court delivered by
Judge Catron.
The writ in ejectment issued on the 11th day of March, 1822. A verdict and judgment were rendered for the defendants, in the Lincoln circuit court, September term, 1823, from which a writ of error was taken by the lessor of the plaintiff, to this court.
The lessor of the plaintiff produced and read to the court and jury below, a grant from the State, dated 19 Oct. 1820* for the land in controversy.
The defendants produced two grants from Peter Wright, one dated the 9th March, 1812; the other, the 25th February, 1814; and also a grant to H. Meek, dated 12 June, 1812, which three grants also covered the land in dispute. The defendants then showed they had been in possession under the grants, from their respective dates, up to the time of the commencement of this suit, which was more than seven years under either of said grants.
The plaintiff produced an entry, dated 2d September, 1817, upon which his grant issued, and which was special and covered the land sued for. This entry was for 640 acres, all of which, except the land now in controversy, was covered by a grant of 1800 acres to Buchanan, who, or those claiming under him, filed a caveat on the 20th day of February, 1812, ■ against Hickman, to stay him from getting a grant.
The caveat continued in various courts, until April 1821, when it was determined that Buchanan’s was the best title, so far as the interference extended; which was not to any of the lands sued for in this action. For the balance of the 040 acre entry, not taken by Buchan-nan’s grant, Hickman got his grant and brought suit.
Upon the above facts, the defendants relied on the statute of limitations, as a bar to Hickman’s action» *201 The circuit court determined that the defendants were protected by the statute.
The statutes which weié adjudged by the circuit court to bar the claim of the plaintiff, are those of 1715, ch. 21, sec. 3, and 1797, ch. 43, sec. 4.
The first substantially provides, “that no pérson who Shall havé any right or title to lands, shall thereunto enter dr make claim, but within seven years after his right Of titié accrued; arid in default thereof shall be forever barred.”
By the act of 1797, it is provided, that if any one has seven years peaceable possession of land, by virtue of a grant, &c. and no legal claim by suit in law, be set up to said land, by virtue of a grant, &c. and within the above said term; then the person holding possession, shall be entitled in preference to all claimants, to the quantity of land covered by said grant, or deed, &c.; and any persons who shall neglect for seven years, from the time pf such peaceable possession having been obtained, to avail themselves of the benefit of any title or legal claim; which they may have to said lands, shall be forever barred.
It is contended on the part of the plaintiff in-error,' that nothing can be interposed to prevent the formation of the bar, declared by the act of 1797, but a,suit at law; and until the plaintiff is in á situation to sue at law; the statute never commences its operation; or in other words, that the character of the defendant’s possession, whether adverse or not, as against the plaintiff, depends upon the state of the plaintiff’s title and his capacity to sue at law, by virtue of that title: that this construction of the statute of 1797, is necessary to give effect to the expression, “that no legal claim by suit at law, be set up to said land, within the above said term;” and that the judgment ought tobe reversed, for a misconstruction of the statute by the circuit court.
The statute provides, that the possessor for seven years, shall be entitled to hold the lands included within the calls of his deed, or grant, in preference to all claimants; and *202 that if any persons shall neglect, for the term of seven years, to avail themselves of the benefit of any Hile, or legal claim, they shall he forever barred.
Language more appropriate, to bar every description of claim, it would he difficult to find in our language; and from which an entry cannot be excepted, unless that part of the statute which declares, that the completion of the bar shall only be prevented by a suit at law, will result in the construction contended for on the part of the plaintiff in error; or unless it is such an equitable estate as is not subject to the operation of the acts of limitation.
It is believed the legislature intended distinctly to define (when they say a suit shall be brought for the land, by him who is holden out,) the manner by which the claimant should assert his title to prevent the bar, without any reference to the impediments opposed to such assertion of title.
Why not bring a suit in equity, on the title vested by the older special entry, if the remedy could not be had at law? It will not be doubted at this day, but that a court of equity has jurisdiction, to render available an older special entry against a younger entry and grant. See Kendrick vs. Dallum, (1 Tenn. Rep. 488, and 2 Tenn. 212;) Winchester vs. Gleaves, (3 Hay. Rep. 213; 2 Tenn. Reports, 408.
The great object of the statute of 1797, was the quiet of settlers. Some of those mainly concerned in its passage, were distinguished surveyors, and almost as intimately acquainted with the state of the country, and the nature of landed titles in this State, as it was possible for men to be. It was well known, that many entries had not been surveyed, and covered lands granted upon younger entries; that an older special entry was good for the land; that a 5000 acre entry, calling to include a notorious object, could be surveyed to include such object in any part thereof, and that such survey could be run twice as long as wide, to wit: four miles by two, reaching almost every spot, between points eight miles distant, hav *203 ing the notorious object for their common centre; not being a specific claim for any particular section of 5000 acres, but a floating claim for near fifty square miles surface; holding in terror and dismay almost half a county of population; that smaller claims resting'in entry, were all governed by the same principles in obtaining surveys and grants; that the country was likely to be equally harrassed, and possessions as much disturbed by entries as by grants; that most generally, the industrious, enterprising and worthy part of the community, have caused their lands to be surveyed and granted, and notified their neighbors of the boundaries; that the indolent and designing had left their entries unsurveyed, perhaps intending to survey them upon the grants of some settler and speculate upon his necessities. Here was a set of claimants, who could survey their lands when they pleased, and almost where they pleased. The surveyor neither in practice did, or in law had a right to control the survey to any considerable extent, as we are told in Hendrick vs. Dallum, (1 Tenn Rep. 488.
Why was this class of .land owners such favorites with the legislature of 1797, as to be by implication, exempted from legislation, intended to protect the rights of those whose claims were based upon the strongest legal sanction — a grant? Because they were weak and helpless. Was that the fault of the industrious occupier of the soil ? It can hardly be imagined that the legislature intended to bar the best title known to our laws, and leave the occupier exposed to the mercy of the weak and dangerous right set up under an entry, subject to be surveyed to almost any spot in its neighborhood, at the mercy of the claimant. If this class of land holders were intended to be favored, why not add the exception to the act, and place them on the footing of infants and feme coverts, until they saw proper to obtain grants?
It is contended that the implication must arise in favor of the claim by entry not being barred, on the ground generally, that until the grant was obtained, it was impossible for the enterer to sue. Furthermore, in this par *204 ticular case, that the plaintiff was precluded from getting a grant by reason of the caveat of Buchanan, until 1820, and therefore it was impossible for him to sue. Although this iq not strictly true, we will admit the fact, and show that if it were true, it would avail the plaintiff nothing. We will answer these objections to the correctness of' the judgment of the circuit court, in the language of the supreme court of the U. States. “The plaintiff claims to be exempted from the operation of the statute of limitations, (1797) not on the character of the defendant’s possession, but on the impediments to the assertion of his pwn title. The statute of limitations is. intended, not for the punishment of those who neglect to assert their right by suit, bqt for the protection of those who have remained in possession under color of title, believed to be good the requisite time to form the bar.” See MIver vs. Ragan, (2 Wheaton, 29.
The character of the plaintiff’s possession can alone be looked to by the court, when considering' of the statute of limitations; if the possession is by virtue of the title required by the statute, then the defendant has a good title against every description of claim, commensurate with the adverse possession, or which has accrued within the time limited before the suit was brought. To this doctrine there are no exceptions, save those contained in the statute itself. Rickard vs. Williams, (7 Wheat. 117.
The latter case came before the supreme court of the U. States upon the statute of limitations of Connecticut, which is in substance the same with our act of 1715, ch. 21, sec. 3, with thejdifference, that the time to form the bar is fifteen years. A creditor there, who had to proceed through the administrator against the real estate, waited more than fifteen years after the intestate’s death before any administration was taken out, and then by the local laws, proceeded against the lands descended from the intestate in the possession of a tortious holder for more than fifteen years, under a void but colorable title, who the court pronounced was protected, and the creditor barred, Here the creditor had no power to fix his debt upon the *205 land, because there was no personal representative through whom it could be reached, although not barred, for this reason, as against the personal estate, yet the court says to him, the defendant’s possession has no ercnce or connection with your misfortunes, the statute has made no exception in your favor, and the court has no power to make any. It would be legislating to do so; and although it was impossible for you to assert your right in time to save the bar, yet the statute operates upon principles inflexible in their character, and forms a positive bar ágainst you.
This was the well settled law of England before the American revolution, and by the authority of which we are as much bound, as by the adjudications of our own courts. For instance, when a civil war raged and the courts of justice were shut, and the bringing a suit impossible on the part of the plaintiff, he has been holden to be barred by the statute of limitations, notwithstandirig the impossibility of arresting its progress: Aubrey vs. Fortescue, (10 Mod. Rep. 206, 4 Bac. Abr. 480; Hale vs. Wyburn, 2 Salk. 420. Hence it is that in England an act of Parliament was passed, 1 W. and M. ch. 4, which provides that the time shall not be counted from the 10th December, 1687, the time K. James departed, until the 12th of March, 1688, the time King William assumed the government.. And the act of 1715, we are now considering of, was superseded by the legislature of North Carolina, by the act of 1784, ch. 4, sec. 9, from the 4th July, 1776, to the 1st day of June, 1784. So the act of 1794, ch. 1, sec. 40 and 73, superseded the operation of all acts of limitation from the 6th March, 1773, to the 24th Dec. 1777.
Our sister states have fully recognized the principle, that no set of circumstances operating upon the plaintiff, will form an equitable- exception to the running of the statute. In New York, Troup vs. Smith, (20 John. Rep. 33. In Virginia, Collis vs. Waddy, (2 Munf. 511. In North Carolina, Hamilton vs. Smith, (1 Murphey’s Rep. 115;) which opinion overrules the dicta in 1 Haywood’s, *206 Rep. 16, 28, and 359. Furthermore, this point is concluded in this state, in the cause of M’Ginnis vs. Jack and Cocke; the court well considered of it in 1825, at Knox-yille, and concurred in the doctrine that the statute alone must form the exception; virtually overruling the cases in 1st Haywood, and of Blanton and Coulson, (3 Hay. Rep. 152;) the distinguished Judge who pronounced the opinion in Coulson vs. Blanton, admitting himself to have been mistaken when thatcause was decided. The cause of Coulson and Blanton was again brought up to the Supreme Court at Sparta, upon a new set of pleadings made up in conformity to the instructions contained in the opinion given in 3 Hay. Rep. at Carthage in 1816. A second verdict as of course, was rendered against Coulson in the Warren circuit court in 1818; his counsel being much dissatisfied with the former decision, again took up the cause to have it reviewed. In August 1825, it came on, and was decided for the defendant below, Coulson, in conformity to the decision made a few days previous at Knoxville, in the cause of M’Ginnis vs. Jack and Cocke. It is therefore perfectly immaterial whether the plaintiff had or had it not in his power to sue. It was a misfortune with which the defendant had no concern, and which the repose of society requires him to sus-, tain.
But, in truth, the questions urged to the court, and above stated and examined, have ever been considered by the principal advocates for the doctrine that an entry was not barred, as of minor weight, and it is imagined not thought to be tenable. The great reason why an entry was not barred by time, as it was supposed, rested upon general principles incident to the administration of the law in a court of equity, which, as was contended, was not bound by the statutes of limitation; nor did it adopt by analogy the bar formed by the statutes at law, in cases other than such, of which courts of law and courts of equity had concurrent jurisdiction; and that a court of equity in all causes where the subject matter was *207 of purely an equitable cognizance, was not bound by, nor was it one of the rules of that court to respect, the acts of limitation in analogy to the rule at law: that an entry was a purely equitable title, which could in no manner be affected by the statute of limitations, which statute by its own language, and by the construction given to it, only applied to barring remedies in courts of common law, and notin chancery. We refer to the very able opinion of Judge Haywood, delivered in this cause in 1825, as containing all the reasons why an entry should not be barred, and why the judgment of the circuit court should be reversed. We had the misfortune to then differ with him in opinion upon this all-important subject of equities being barred, as well as legal claims; believing that although the statutes of limitation did not extend to suits in chancery, yet courts of equity were equally bound with courts of law to respect them in causes generally coming before those courts, whether they were purely of equitable cognizance, or the courts of law had concurrent jurisdiction with courts of equity: that in equity the rule of decision of the court, is the law of the court; and whether the Chancellor he governed in his' opinion by analogy to the rule at law, or by a statute directly, is quite immaterial. We take the law at this day to be well settled, nay, conclusively settled, that the courts of chancery are equally as much bound to respect the statutes of limitation as courts of law; such is apprehended to have been the rule of decision in the courts of equity in this state. John Shelby’s heirs vs. Isaac and David Shelby, (Cooke’s Rep. 179.) Porter’s lessee vs. Cocke, (Peck’s Rep. 30.) In the United States Supreme Court, Elmendorf vs. Taylor, (9 Wheat.) In England, Marquis Cholmondely vs. Lord Clinton et als. (2 Jacobs and Walker,
It has been urged as of much consequence in the decision of this cause, that the prevailing opinion of the most distinguished counsel in the state for many years has been, that an entry was not barred by the statute of limitations, which only commenced its operation from the *208 time the grant issued to the party holden out. We have much respect for the opinions of distinguished men upon fairly brought to their consideration; yet it is a well known fact, that the serious agitation of the subject of limitation in reference to real property in this state, is of comparative recent origin, and that the construction of the statute of 1797, upon the contested point of what should be the character of the title of the possessor to form the bar connected with a peaceable possession adversely holden for seven years, was not settled until after this cause was determined in the circuit court: that that question occupied the principal part of the attention of the bar and bench, when this statute was under view. It is no doubt the fact, • that this is the first time the point has ever been brought directly and singly in any cause' before this court.
In the cause of Holland vs. -, decided at Columbia by this court, the question arose before Judges Peck and Brown, when the latter gave it as his opinion, , that the entry of the plaintiff below, Holland, was barred; Judge Peck gave no opinion upon that point, but concurred with Judge Brown in another, upon which the cause was decided against the claim o'f the plaintiff Holland,; We can hear of no other cause which presented the question.
On no ground assumed is it believed ought this judgment to be reversed. It is therefore ordered that the same be affirmed.
Opinion of Judge Haywood, (a) The facts are briefly these. Hickman first entered the lands in qustion. His entry was a special one; and he did not obtain his grant fill within five years next before the commencement of this action. The grant, under which Gaither claims, issued upon a later entry, and possession has been taken *209 and kept tinder it for more than seven years next before ... • , ,. the commencement oí this action.
The question proposed by the record for the determin-átion of the court is, whether the plaintiff is barfed of his action or not by the act of limitations.
The act of 1715, and the act of 1797, ch. 43, sec. 4, bar tbe plaintiff who fails to enter or make claim in seven years,. Of who fails to set tip his legal claim in seven years by suit at law. These are all of them legal remedies for legal rights; and consequently none but legal rights and reihe-dies are barred by the words of these acts. An entry is appointed by the law as One means to be used by him who has the right of possession to recover the same. A claim is for thé same end and purposé, and to be used by him who has the legal right of possession to recover it when he dares not make his entry. And as none but he who has a right of entry, can maintain an ejectment, to bar this right of entry is to bar the ejectment: A legal (claim to be asserted by a suit at law, seems as if intended to exclude the idea of equitable titles to be' asserted by feqúitablé suits or bills in equity, and to bé‘ designed purposely to exclude them from the operation’of the act of 1797. They aré not embraced by the w'ó’fds of either act, and if within' them, are so becáuse within the spirit :and meaning of the act. A matter recoverable by a suit at law, and also by a suit in equity, if barred when sued for at law, but not when sued for in equity, would be go-' verned, not by the law, but by the option of the person to be barred, who might evade the bar at his pleasure by going to the court where the bar will not be pleaded. This privilege he ought not in justice to have, and therefore the defendant may plead the act of limitations in either, court; and so the law is kept steady and uniform in its operations; Here equity adopts the statute as a positive bar, by analogy to the action at law for the same cause, and to the time which bars it by the act of limitations. The act itself is pleaded, and not length of time only, as in the case of equities sued for, for which there is no action at law, and no bar by the statute of limitations, by *210 analogy to which .equity can fashion its rules. For this reason, all equities, which are purely and simply the creatures of equity, not known to the common law, and for the violation of which there is of course no remedy provided by the common law, are not subject to the acts of limitation, for there is no remedy at law barred by the act, by analogy to which the time for barring the equitable remedy can be fixed, and though in equity the rule is, that bills shall not be entertained upon stale and antiquated demands, yet the court in refusing its assistance, goes Upon the doctrine of presumption from length of time, and length of time is relied on in the pleadings, not the act of limitations. The court, presuming from length of time the payment of a debt, the release of a right, or an effectual desertion of it, and for that reason, that there should not be a recovery upon it in any court, dismisses the bill. To illustrate this doctrine by example, let us take the case of an equity of redemption. It is a pure creature of equity, not dependant in any respect upon the agreement of the parties. The legal estate is in the mortgagee, the equity is created by the rules of a court of equity to prevent an unconscionable advantage being taken of the mortgagor by the mortgagee. If the mortgagor do not bring his bill founded upon this equity of redemption within twenty years, he is barred; and equity will refuse its aid, not by analogy to the twenty years act, which bars a right of possession and the ejectment founded upon it. The loss of the equity of redemption is the loss of the inheritance forever, not the loss of the right of possession only; and if the court went upon analogy, this equitable right, like the inheritance, would ■ not be lost in less than sixty years; for that is the time established by English statutes, for barring the action by which the inheritance or right of property is recovered. Equity does not proceed upon any such analogy, but upon the presumption which length of time raises in all instances, according to the nature of the case, and in this instance, upon the presumption after twenty years have elapsed, that the mortgagor in the mean time has giv *211 en up and deserted his right of redemption. (1 Fonb. 323. If the dismission of the bill proceeded on the grounds of analogy, it would be barred by the act of limitations in seven years, which never has been done in this state or North-Carolina. The presumption which is the foundation of dismission, arises upon the same principles exactly upon which a bond is presumed to be paid in twenty years, in which time so many other things are presumed to have been done. A legacy or distributive share is another instance. There is no remedy at law for the recovery of it, and no time to be fixed by analogy. The act of limitations cannot be pleaded to a bill in equity for it. But if a great length of time has intervened, this may be relied on as a reason why the bill should be dismissed, because a presumption is made from length of time that the legacy has been paid or released. (Amb. 545. 3 Br. Ch. Rep. 639. 2 Ves. 482. 2 Ves. jr. 11, 278. 2 Ten. Rep. 179. The incorrectness of the position that mere equities are subject to be barred by the act of limitations may be shown by attending to the consequences of the position. A sells real estate to B, and gives him a bond to make title at the end of the year, and B gives a bond to pay the purchase money at the end of the year; B is barred of his equitable estate in seven years, but A may sue upon the bond for 13 years after-wards. Again; A is a trustee, and B a cestui que trusty and A dies, and the bond descends to his heir, an infant, and D takes possession under color oj title, the cestui que trust is barred at the end of seven years; but the trustee may sue for and recover at any time before arriving at the age of 24 years, and will hold the lands discharged of the trusts. Otherwise the equitable estate of cestui que trust will vest in D, and will make him the cestui que trust when the trustee shall recover the land against him, whereas, hitherto the rule has been taken to be, that the cestui que trust is not barred, so long as the trustee is not barred; and that when the trustee is barred, the cestui que trust is barred likewise. This must be so, if the cestui que trust is preserved because of infancy; and if not so *212 preserved, it must be because his estate is not subject tq the act of limitations. Take which position yon please, and the consequence is, that the act of limitations cannot be a bar. To make him a trustee who has gained the legal estate by a seven years’ possession, defeats the act of limitations, which meant to give him the unincumbered fee, and to bar the cestui que trust of his equitable estate, because you will not allow him the exception of infancy, equally encroaches upon and infringes the act. But say that he is barred only when the legal estate is barred, and all is right and consistent. If such is the result from rea-¡ soning on general principles, that result is much strengthened by a close application to the particular case of an entry. The entry itself, and all the remedies incident tp it, were instituted with a view to legal rights and remedies. If an enterer who ought not to obtain a grant was, about to obtain one unjustly, the law: gives to, the injured party a caypat tobe tried by jury. If this remedy was eyacíed by fraud or cunning, and the grant issued, the law made a later grant founded on a prior entry to relate to the date of the entry, and thus to overreach the former-grant upon a later entry. There was no need of a bill in equity to. make the first grantee- convey the.legal title to the first enterer. There was, np court of equity till 1782, after the principal entry laws were made. The necessity for a bill jn equity was not pnly avoided in this time of legal rerpedies and jury trials, but when the court was established, it could not be entertained. Other sufficient legal remedies had been provided, and instead of claiming conveyance from the %st grantee, the second grant overreached the title derived from it by relation to an anterior day. ' Had a conveyance been applied for, the answer would have been, obtain your grant, and you will obtain the title you want. You have full relief at law, and you shall not come hither. For this reason, no instance can be mentioned of a bill in equity against the first grantee upon a later entry to make him convey to the-first enterer. He has already gotten his grant upon the former entry, and tried his title upon it by the verdici, *213 i>f a jury in a court of law. If the first enterer must bring a bill in equity upon the equitable title, what must be its object? To be permitted to get a grant? There is nothing that hinders him to have a conveyance. That is not the remedy which the law has provided. To have his entry established? This is done already by the entry. To have the grant upon the latter entry declared void? By the express words of the acts of Assembly,itis so deemed ab initio whenever the grant issues upon the first entry. To have the legal estate conveyed to the complainant, which vested in the first grantee by the grant which issued to him? No estate could vest in him, when the grant to him is void from the first moment of its execution. There is no object to be attained by such a bill in equity. It would be vain and useless, and cannot be required under the penalty of losing what is improperly termed his equitable estate.
And again, what was'Hickman entitled to? A grant from the State, relating to the date of his entry. Could he sue the defendants in equity for that? Could he even sue the State for it? So long as the State withheld the grant he couldfnpt sue for it. • And where there is no one to sue or to. be sued, the rule is, under the act of limitations, that there is no bar. Must a plaintiff be barred for not doing an impossibility? How will D in possession, under a prior grant and later entry, avoid the ti-, tie by a second grant upon a prior entry? Will D by the act of limitations, acquire the right to the grant from fhe State which the first enterer had, and make the second grantee a trustee for the first, when the grant issues?This has never been done, and if it cannot be done, then when the grant issued to Hickman, he had the prior title in law and equity, and was not a trustee for the defendant. But suppose Hickman barred of his equitable estate, can he, having the grant of the State, and legal title, be barred of his action of ejectment? The law is settled, that in the trial of an ejectment, the legal title is only in ■ question, and that he who hath it must prevail. (2 Term Rep. 684. If the equitable estate derived from *214 an entry can be barred, it must be because a bill in equity will lie for it, and has been neglected for seven years, And then, though no survey can ever be made upon it, and no grant can ever issue, the offices being closed for making surveys and grants upon them, yet the entry is still living, a bill in equity may be maintained on it, and where, by reason of disabilities, the act of limitations cannot run, these old claims may become the groundwork of much litigation in equity, when at the same time the legislature by its provisions supposes, that all such entries are defunct, and without vigor or effect. Whenever there have been interfering entries, in whole or in part, and grants have been issued upon the later entries, and possessions have been taken under them, and continued for seven years before grants issued upon the former entries, which grants, after a long space, have been given up to the grantees under the latter grants, these would all be reclaimed as resigned by mistake; since by the act of limitations, the best title really resided in the first grantee upon the latter entry, though at the time of surrendering to the latter grant upon the first entry, it was universally understood that the best title was in the latter grantee. In settling law suits and old claims by the act of limitations, we should lay the foundation for more than we settled by this new doctrine, that equitable estates can be barred by the act of limitations. My opinion is, that Hickman cannot be barred by the statute of limitations.
Judgment affirmed.

 This opinion was delivered at a previous term, at which time no judgment was given; the cause being continued upon advisement.